IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOGAN SCHWEITER, a minor, by | : | |
| MELISSA SCHWEITER and MARTIN | : | |
| SCHWEITER, parents and natural | : | |
| guardians, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 16-5258 |
| | : | |
| TOWNSHIP OF RADNOR, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**MARILYN HEFFLEY, U.S.M.J.**                                                                 January 12, 2018

Before this Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 36) of Defendant the Township of Radnor ("Defendant" or "Radnor") for failure to state a claim. For the reasons that follow, Defendant's Motion to Dismiss will be granted.

**I.      BACKGROUND**

Plaintiffs Logan Schweiter ("Logan") and his parents (collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 against Radnor seeking to recover for alleged violations of Logan's constitutional rights that led to serious, permanent injuries in a near-drowning.[1] The

---

[1] On October 5, 2016, Logan's parents filed this suit on his behalf, alleging two counts pursuant to 42 U.S.C. § 1983 for violations of Logan's Fourteenth Amendment rights. Compl. (Doc. No. 1). Radnor moved for judgment on the pleadings and Plaintiffs amended their Complaint in response thereto. Radnor again moved for judgment on the pleadings, which was granted by the Honorable Legrome D. Davis. September 5, 2017 Order (Doc. No. 31) [hereinafter "9/5/17 Order"]. Plaintiffs were given leave to file a Second Amended Complaint, which they did on September 19, 2017. Doc. No. 34. Radnor filed the present Motion to Dismiss Plaintiffs' single count Second Amended Complaint and the case was transferred to the Honorable Mark A. Kearney for all further proceedings. Thereafter, upon consent of the parties

(Footnote continued on next page)

facts, as alleged in the Second Amended Complaint [hereinafter "SAC"], are as follows. On July 25, 2011, 12-year-old Logan was visiting a friend's home on St. David's Road in Radnor Township, Pennsylvania. SAC ¶ 77. The backyard of the home abutted an open portion of a brick culvert built in the early twentieth century that serves as part of Radnor Township's stormwater system ("the Culvert"). Id. ¶¶ 26, 29, 77. The portion of the Culvert abutting the backyard of the home was known as "the Aberdeen Culvert." Id. ¶¶ 32-34. The underground portion of the Culvert is not visible from the portion of the Aberdeen Culvert that abuts the backyards of the homes on St. David's Road. Id. ¶ 34. Saint Katharine of Siena School, where Logan was a student, is also across the street from the Aberdeen Culvert and the mouth of the underground portion of the Culvert. Id. ¶¶ 41-43.

A rainstorm that day had led to water overflowing the walls of the Aberdeen Culvert, creating a pond in the backyard of Logan's friend's house. Id. ¶ 79. Logan and his friends took foam rafts and began to play in this pond. Id. ¶ 80. The current sucked Logan into the mouth of the underground portion of the Aberdeen Culvert, where he traveled about a half-mile while submerged in water. Id. ¶¶ 81-82. Logan was unconscious when he was found and was transported to the Children's Hospital in Philadelphia. Id. ¶¶ 82-83. He survived, but suffered serious injuries, including "cardiac arrest, pulmonary edema, aspiration pneumonia, seizures, and profound brain damage." Id. ¶ 84. Logan's permanent physical and mental injuries, including severe hypoxic encephalopathy, have left him "in a near-vegetative state" and he requires around-the-clock care. Id. ¶ 85.

---

and by order of Judge Kearney, the case was referred to the undersigned to conduct all further proceedings including trial, the entry of final judgment, and all post-trial proceedings. Doc. No. 44.

Radnor was aware of flooding problems associated with the Culvert, as the problems have been the subject of stormwater studies dating back to the 1970s. See, e.g., id. ¶¶ 32, 35, 65, 94. The Culvert is not large enough to handle the flow of water during large storms, making it "prone to consistent and sometimes life-threatening flooding events." Id. ¶ 35; see also id. ¶¶ 18-19. Radnor also knew of children playing in and around the Aberdeen Culvert's flooded waters for over 40 years, and knew there was a chance of children being drawn into the underground portion of the Culvert. Id. ¶¶ 38-39. The frequency and intensity of this flooding has worsened as a result of the construction of a new middle school in Radnor Township between 2006 and 2007[2] on top of the Culvert, and upstream from the Aberdeen Culvert, which increased water flow through the Culvert. Id. ¶¶ 62, 71. Radnor did not, however, implement recommended stormwater improvements or install a safety grate over the Culvert's mouth when the middle school was constructed. Id. ¶¶ 62, 66-71.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely

---

[2] Although Defendant disputes that it was responsible for the construction of the middle school, it concedes that, for purposes of this Motion, Plaintiffs' allegation that Radnor was responsible for the construction of the school should be accepted as true. See Def.'s Reply (Doc. No. 41) at 6.

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citations omitted) (quoting Twombly, 550 U.S. at 556-57). "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element . . . ." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). It requires "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Great W. Mining & Mineral Co., 615 F.3d at 177 (quoting Twombly, 550 U.S. at 556). In determining the adequacy of a complaint, the Court must "'accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff.'" Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## III. ANALYSIS

Plaintiffs bring this action against Defendant under 42 U.S.C. § 1983 for violating Logan's right to freedom from state-created dangers. The Due Process Clause of the Fourteenth Amendment forbids a state from depriving a person of life, liberty or property without due process of law. It does not impose an affirmative obligation on the state to protect citizens from private conduct, but under the state-created danger doctrine, "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original) (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)). A plaintiff

4

may recover under this right pursuant to 42 U.S.C. § 1983. See Henry v. City of Erie, 728 F.3d 275, 282 (3d Cir. 2013). But this right is carefully limited; "the Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989). To establish a state-created danger claim, a plaintiff must plead four elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Henry, 728 F.3d at 282.

### A. Plaintiffs Fail to Sufficiently Plead That Logan's Harm Was "Fairly Direct" to Radnor's Conduct

To satisfy the first prong of a state-created danger claim, a plaintiff must sufficiently allege that the harm ultimately caused was both foreseeable and fairly direct. Id. Harm is foreseeable when there is "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." Phillips, 515 F.3d at 238; see also K.S.S. v. Montgomery Cnty. Bd. of Comm'rs, 871 F. Supp. 2d 389, 400 (E.D. Pa. 2012) ("'[H]arm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual . . . such that the actor is on notice that his or her act or failure to act significantly enhances the risk of harm.'" (quoting Gremo v. Karlin, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005))). "An official's actions are the 'fairly direct' cause of the harm if the actions 'precipitated' or were the 'catalyst' for the

5

harm that occurred." Van Orden v. Borough of Woodstown N.J., 703 F. App'x 153, 157 (3d Cir. 2017) (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997)). To determine if the harm is fairly direct, the Court considers "whether the alleged misconduct and the harm caused were 'too attenuated' to justifiably hold the defendant liable." D.N. ex rel. Nelson v. Snyder, 608 F. Supp. 2d 615, 625 (M.D. Pa. 2009) (quoting Phillips, 515 F.3d at 238). "The actions must be close in time and progression to the ultimate harm, and it is insufficient if the causation is so attenuated that the officials actions merely 'took place somewhere along the causal chain that ultimately led to the [victim's] harm.'" Van Orden, 703 F. App'x at 157 (quoting Henry, 728 F.3d at 285).

Here, Plaintiffs sufficiently allege that Logan's injuries were foreseeable. In particular, they aver that Radnor was aware that the Culvert was prone to flooding, that the Radnor Township police prevented children from playing in the Culvert after rainstorms, that playing in the Culvert could lead to drowning, and that neighbors surrounding the Culvert questioned Radnor about the installation of safety grates over the Culvert's mouth. SAC ¶¶ 32, 35, 38-39, 50, 65.

Plaintiffs, however, fail to sufficiently allege that Logan's injuries were a fairly direct consequence of Radnor's conduct. To the extent Plaintiffs contend that Logan's injuries resulted from Radnor's construction of the original Culvert in the early twentieth century, SAC ¶ 29, that conduct, approximately a century ago, is simply far too attenuated to support a claim of state-created danger. See 9/5/17 Order at 6. Plaintiffs also aver that the construction of Radnor Middle School purportedly increased the flow of water through the Culvert, thereby leading to Logan's injuries. SAC ¶ 71. Radnor Middle School was constructed between 2006 and 2007, see id. ¶ 62; Logan's injuries, however, did not occur until approximately four years later, in

6

2011, id. ¶ 77.  Where a defendant's actions are "separated from the ultimate harm by a lengthy period of time and intervening forces and actions," they cannot be said to be "fairly direct." Henry, 728 F.3d at 284-85.  In the present matter, the action of constructing the school was not sufficiently "close in time or progression" to Logan's injuries to adequately plead that Radnor's actions were the "fairly direct" cause of his harm.  Id. at 285 (citing Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002) ("affirmative conduct for purposes of § 1983 should typically involve conduct that imposes immediate threat of harm, which by its nature has a limited range and duration")).

As alleged in the SAC, Logan's serious injuries were caused by his decision to play in the stormwater system after a rainstorm had flooded the Culvert.  It was Logan's action of jumping into the flooded waters to play that was the direct cause leading to his injuries.[3]  See, e.g., Grau ex rel. Grau, 2010 WL 3811829, at *7 (holding minor plaintiff's death was not a "fairly direct" consequence of defendants' failure to enforce its closed campus and parking permit policies when minor plaintiff left school early on his own volition and chose to ride as a passenger in the other student's car).  Plaintiffs contend that flooding in the Culvert had been a longstanding issue, significantly pre-dating the construction of the Radnor Middle School.  Plaintiffs

---

[3]   The fact that Logan was a minor at the time of his injuries does not negate his role in the tragic accident, or necessarily shift responsibility to Radnor for Logan's decision to play in the flooded waters of the Culvert.  See, e.g., Grau ex rel. Grau v. New Kensington-Arnold Sch. Dist., No. 10-111, 2010 WL 3811829, at *7-8 (W.D. Pa. June 30, 2010) (determining that defendant school district's failure to enforce its closed campus and parking permit policies was not the "but for cause" of minor plaintiff's death from a car accident because it was "Minor Plaintiff who chose to leave the school, ride as a passenger in the car with [another] student, who then lost control of his vehicle resulting in Minor Plaintiff's death"), report and recommendation adopted, No. 10-111, 2010 WL 3824207 (W.D. Pa. Sept. 23, 2010), aff'd sub nom. Grau v. New Kensington Arnold Sch. Dist., 429 F. App'x 169 (3d Cir. 2011); cf. Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 52-55 (1st Cir. 2006) (plaintiffs failed to state a claim of substantive due process in death of 14-year old boy who fell into an open manhole obscured by floodwaters).

specifically aver that, "[a]s Radnor Township was developed, the natural environment was manipulated to maximize the use of land resources. The result was streams replaced by culverts, loss of flow capacity within remaining stream corridors, extensive areas of impervious surfaces, few stormwater flow controls and homes built much too close to consistent flood hazards." SAC ¶ 12. Accordingly, there have long been "areas of Radnor Township that have endured reoccurring large scale flooding events for decades." Id. ¶ 13. As acknowledged by Plaintiffs, the area "has been prone to flooding caused by [this] development and stormwater practices in place before the 1970s." Id. ¶ 28. Despite the tragic nature of this case, these facts as pled do not sufficiently establish that Radnor's conduct was the "fairly direct" cause of Logan's injuries.

### B. Plaintiffs Fail to Sufficiently Plead That Radnor's Conduct Shocks the Conscience

Plaintiffs allege that Radnor's failure to implement recommended stormwater improvements or install an inexpensive safety grate at the opening of the Culvert when it built Radnor Middle School shocked the conscience and were deliberately indifferent to the safety of children.

The Supreme Court has emphasized that the touchstone of due process is protection against arbitrary government action. L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 246 (3d Cir. 2016). "Government action is 'arbitrary in the constitutional sense' when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)). There is "'no calibrated yard stick'" to measure what actions shock the conscience, and the "'exact degree of wrongfulness necessary . . . depends upon the circumstances of a particular case.'" Kaucher v. Cnty. of Bucks, 455 F.3d 418, 425-26 (3d Cir. 2006) (quoting Lewis, 523 U.S. at 847; Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999)). This element may be satisfied by allegations showing the state acted

8

with "(1) deliberate indifference; (2) gross negligence or arbitrariness that indeed shocks the conscience; or (3) intent to cause harm." Phillips, 515 F.3d at 241. In "hyperpressurized environments" intent to harm is required, but where a state actor has time to deliberate and make "unhurried judgments," deliberate indifference is the proper standard. Id. The Third Circuit has "describe[d] deliberate indifference as requiring 'that a person consciously disregard a substantial risk of serious harm.'" Kaucher, 455 F.3d at 427 (quoting Ziccardi v. City of Phila., 288 F.3d 57, 66 (3d Cir. 2002)). The state actor's conduct "must evince a willingness to ignore a foreseeable danger or risk." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997). Here, because Radnor did not make the decision to build the Radnor Middle School in a hyperpressurized environment, but instead, thoroughly deliberated the plans for construction, see SAC ¶ 72, the deliberate indifference standard is appropriate.

In granting Radnor's Motion for Judgment on the Pleadings with respect to Plaintiffs' First Amended Complaint, this Court determined that the First Amended Complaint failed to allege facts showing that Radnor was aware that failing to make all of the recommended stormwater improvements would result in increased flooding of the Culvert, or that such flooding would create an increased risk of the type of harm that occurred in this case. The Court held that:

> Although the amended complaint does make allegations about Radnor Township's knowledge of potentially dangerous flooding problems, there are not facts pleaded that show Radnor Township was aware that its decision to implement some stormwater recommendations but not others when constructing the middle school created an increased risk of serious injury. Without factual allegations showing that Radnor Township knew—or that it was obvious— constructing the middle school without all of the stormwater improvements would result in a substantial risk of harm like that suffered by Logan, Radnor Township cannot have acted with deliberate indifference.

9/5/17 Order at 7. The Court further stated that Radnor's alleged failure to follow all of the stormwater management recommendations when Radnor Middle School was constructed "is

9

similar to the failure of the local municipality in Ameika v. Moss[, 628 F. App'x 86 (3d Cir. 2015)] to complete flood control measures." 9/5/17 Order at 7. In Ameika, the Third Circuit held that the defendants' actions of building an incomplete dirt dike and ignoring an emergency flood plan, causing flood damage to three properties, did not shock the conscience. Ameika, 628 F. App'x at 87, 89. This Court determined that Radnor's failures to follow all of the stormwater improvement recommendations was, at most, negligent. 9/5/17 Order at 8.

In an attempt to cure the defects of their First Amended Complaint, Plaintiffs add allegations emphasizing Radnor's awareness of the potentially life-threatening flooding events that could occur in the flood-prone area where the Culvert was located, see, e.g., SAC ¶¶ 22-24, 45-46, 65, and its decision not to install pre-fabricated safety grates at the mouth of the Culvert, see, e.g., id. ¶¶ 43, 48-50, 54, 56, 60-61, 73. These allegations, however, do not cure the deficiencies identified by this Court with respect to the First Amended Complaint. While the building of the Radnor Middle School may have, as the SAC alleges, increased flooding in the Culvert, where children had been known to play, the SAC fails to sufficiently allege that in constructing the Middle School without the recommended stormwater improvements, Radnor was disregarding an obvious risk that a child would be sucked into the underground portion of the Culvert. Despite Plaintiffs' allegations that "[f]or many years, the police . . . ha[d] been summoned to prevent children from playing in the culvert area when rain storms caused flooding," SAC ¶ 40, they have not averred that prior to Logan's accident, any accident had ever occurred or that anyone ever had previously suffered any injuries in connection with the Culvert. Although Radnor's installation of safety grates may have been prudent, it is not shocking to the conscience that Radnor did not implement additional remedial measures to improve the stormwater system or cover the mouth of the Culvert.

This conclusion is particularly true given the presumption of rational decisionmaking imputed to the policy decisions made by government representatives. See 9/5/17 Order at 6; Collins v. City of Harker Heights, 503 U.S. 115, 128-29 (1992). "In light of this presumption, federal courts have been careful not to second guess state decisions about how to allocate limited resources, even where the decisions create a known risk, and even if some decisions could be made to seem gravely erroneous in retrospect." Crockett v. Se. Pa. Transp. Ass'n, No. 12-4230, 2013 WL 2983117, at *5 (E.D. Pa. June 14, 2013) (internal citations and quotation marks omitted), aff'd sub nom. Crockett v. Se. Pa. Transp. Auth., 591 F. App'x 65 (3d Cir. 2015). Plaintiffs emphasize the allegedly inexpensive cost of installing safety grates given the overall annual budget for Radnor Township. See SAC ¶¶ 54-56. Radnor's decision, however, on how to allocate that budget is entitled to deference. Although Plaintiffs allege that "[m]any, if not most jurisdictions across the Commonwealth of Pennsylvania have initiated programs to place safety grates on culverts and drain pipes to protect children from drowning," SAC ¶ 60, a decision by Radnor to save money by foregoing improvements or installation of safety grates in this instance is precisely "the type of budgetary decision that state [and local] governments are presumptively entitled, if not forced, to make," Crockett, 2013 WL 2983117, at *5. Here, the allegations regarding Radnor's decisions not to implement the recommended stormwater improvements or install safety grates are insufficient to establish that its conduct rose to the level of deliberate indifference to a known or obvious risk, despite the undeniably tragic injuries Logan suffered.

### C. Plaintiffs Fail to Sufficiently Plead That Logan Was Part of a Discrete Class of Foreseeable Victims

Plaintiffs' claim also fails because Logan was neither a known victim nor a member of a discrete class of foreseeable plaintiffs. The third requirement of the state-created danger claim is

11

that there exists a special relationship between the state and the plaintiff, such that the plaintiff is "a foreseeable victim of [the state's] acts in a tort sense." Kneipp, 95 F.3d at 1209 n.22. The plaintiff can be either "'a specific individual [ ] placed in danger' or 'a member of a discrete class of persons subjected to the potential brought about by the state's actions,' but his [or her] dealings with the state must somehow distinguish him [or her] from a member of the general public." Burnette v. City of Phila., No. 13-0288, 2013 WL 1389753, at *6 (E.D. Pa. Apr. 5, 2013) (quoting Morse, 132 F.3d at 913); see also Watson v. Methacton Sch. Dist., 513 F. Supp. 2d 360, 376-77 (E.D. Pa. 2007). Foreseeability alone is not sufficient to establish a discrete class; the plaintiff must be part of "a limited group of potential plaintiffs." Morse, 132 F.3d at 913 n.12. The Third Circuit has deemed this requirement satisfied where the state actor had "individualized relationships involving personal contact in close proximity to the injury suffered." Martorano v. City of Phila., No. 09-3998, 2009 WL 3353089, at *3 (E.D. Pa. Oct. 14, 2009) (summarizing Third Circuit case law). "Under this framework, a plaintiff is not part of a discrete class if the risk applies to thousands, or even hundreds, of people and the risk exists for an 'indefinite' duration of time." Crockett, 2013 WL 2983117, at *6.

Plaintiffs fail to meet the special relationship requirement because the SAC does not sufficiently demonstrate that Logan was in a discrete class of persons subject to foreseeable harm as a result of Radnor's alleged conduct. Plaintiffs argue that Radnor's actions "specifically targeted school-age children" and allege that Logan was part of a limited group of students who attended St. Katharine of Siena School, which abutted the Culvert. See, Pl.'s Resp. (Doc. No. 40) at 18. To the extent Plaintiffs attempt to define the class as "children" generally, that group is far too broad to meet the standard of a discrete class of individuals. Moreover, to the extent that Plaintiffs seek to narrow the proposed discrete class to the students of St. Katharine of Siena

12

School, there appears to be no correlation between Logan's attendance at that school and the accident that resulted in his injuries. Plaintiffs do not allege that Logan was at school the day of the accident (the injuries occurred in July, when presumably school was not in session), nor are there any allegations that he played in the Culvert at any time while he was attending school, or that the friend with whom he was visiting was a student of the school.[4]

Ultimately, Plaintiffs allege that the flooding of the Culvert has been a longstanding issue, but fail to sufficiently establish that Logan was at a heightened risk of injury because he attended a neighboring school. See, e.g., Long v. Armstrong Cnty., 189 F. Supp. 3d 502, 511 (W.D. Pa. 2016) ("[W]hile it might be *more* foreseeable that those residing around some danger allegedly created by the state might be victims of harm (that is, more likely to be injured from a probability perspective), without some specific relationship or other indication that they are especially likely to be harmed by the government's act, they are not *sufficiently* discrete or foreseeable to warrant state created danger liability." (emphases in original)); cf. Ramos-Piñero, 453 F.3d at 54 (when student fell into an open manhole near a school, First Circuit "emphasize[d] that the danger at issue in th[e] case was a danger to the general public—not a danger that was in any meaningful sense specific to [plaintiff]"). Accordingly, Plaintiffs' allegations are insufficient to satisfy the third prong of the state-created danger doctrine.

---

[4] To the extent Plaintiffs attempt to rely on other cases in which courts have found school students to be a discrete class of foreseeable victims, those cases are easily distinguishable in that they typically involved a school employee's malfeasance. See, e.g., L.R. 836 F.3d at 247 (holding that student was a member of the discrete class of kindergarten children that was put at risk by teacher's failure to follow policy of requiring proper identification before a child was released during school to an adult).

### D. Plaintiffs Fail to Sufficiently Plead That Radnor Acted Affirmatively to Create or Increase a Danger

Finally, a plaintiff must allege a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Henry, 728 F.3d at 282. This element requires allegations of "misuse of state authority, rather than a failure to use" it. Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d Cir. 2006). "But a specific and deliberate exercise of state authority, while necessary[,] . . . is not sufficient. There must be a direct causal relationship between the affirmative act of the state and plaintiff's harm." Kaucher, 455 F.3d at 432. Thus, to satisfy this requirement, a plaintiff must allege "the state's action was the 'but for cause' of the danger faced by the plaintiff." Id.

A fair reading of the SAC reveals that Plaintiffs' claim is premised upon Radnor's decision not to act, i.e., its failure to implement recommended improvements to the stormwater system when it constructed the Radnor Middle School or install a safety grate. "These inactions do not constitute affirmative conduct that created a danger or exacerbated a danger that plaintiffs otherwise faced." Ameika, 628 F. App'x at 89. Although Plaintiffs attempt to frame the construction of the Radnor Middle School without the recommended stormwater improvements as an affirmative act, "[d]ecisions to forego remedying known hazards are not affirmative acts for purposes of state-created danger claims, and courts have repeatedly rejected attempts to characterize them as such." Crockett, 2013 WL 2983117, at *8; see also 9/5/17 Order at 6 ("Failure to prevent flooding is not the type of affirmative act that can support a state-created danger claim." (citing Searles v. Se. Pa. Transp. Auth., 990 F.2d 789, 793 (3d Cir. 1993) (holding that a state actor's failure to remedy a known danger is not an affirmative act that can violate the Fourteenth Amendment)). In Ameika v. Moss, for example, the Third Circuit found

14

that the plaintiffs failed to plead affirmative conduct where the defendants knew of the expected high crest of rivers during a hurricane and ignored an emergency action plan calling for sandbagging the areas likely to be flooded despite being aware of potential dangers from flooding since 1972. 628 F. App'x at 88-89. Similarly, here, Plaintiffs repeatedly allege that Radnor acted with deliberate indifference when it decided against installing stormwater improvements that had been recommended when it built Radnor Middle School or a safety grate to address longstanding issues with flooding. See, e.g., SAC ¶¶ 70-75. These allegations are insufficient, however, because they rely on the inactions of Radnor. "[M]erely restating inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." Knellinger v. York St. Prop. Dev., LP, 57 F. Supp. 3d 462, 470-71 (E.D. Pa. 2014). "Failing to take appropriate action is precisely the type of inaction that does not satisfy the fourth prong of the test." Id. Consequently, because these allegations are, "at their core, [] omissions, not commissions—inactions rather than actions," Plaintiffs fail to satisfy the fourth prong of the state-created danger test. Phillips, 515 F.3d at 236; see also Kaucher, 455 F.3d at 435 (plaintiff's allegations related to defendants' failure to take certain affirmative acts to increase safety standards at the jail "are insufficient to trigger substantive due process liability"); Tobin v. Washington, No. 06-5630, 2007 WL 3275073, at *7 (W.D. Wash. Nov. 5, 2007) (finding no affirmative, causative act when the defendant social workers licensed a daycare and a two-year-old subsequently escaped from it and drowned in a lake across the street). Thus, Plaintiffs have failed to allege affirmative acts that were the "but for cause" of the risks Logan faced.

15

## IV. CONCLUSION

The Court recognizes that the circumstances giving rise to this case are extremely tragic and that Logan suffered catastrophic injuries. However, for the reasons set forth herein, the Court must conclude that Plaintiffs have not stated a claim for a state-created danger under the Due Process Clause of the Fourteenth Amendment. The Plaintiffs have had two opportunities to amend their Complaint and it is apparent that permitting further amendment would be futile in light of the facts alleged. Phillips, 515 F.3d at 236. Therefore, this Court will dismiss the SCA with prejudice. An appropriate Order follows.

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE